IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANIEL NICK KEHAGIAS,           )
                                )
        Plaintiff,               )
                                )
                                )
v.                              )   1:11CV1133
                                )
GLOCK, INC.,                    )
                                )
        Defendant.               )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendant's motion for summary judgment (Docket Entry 20) pursuant to Federal Rule of Civil Procedure 56. Plaintiff has responded to the motion and the matter is ripe for disposition. For the reasons that follow it will be recommended that the motion be granted.

## I. PROCEDURAL BACKGROUND

On November 21, 2011, Plaintiff commenced this action against Defendant Glock in the Superior Court of Lee County, North Carolina. (Compl., Docket Entry 4.) In his complaint, Plaintiff alleged two causes of action: (1) "Strict Liability – Defect in Design" and (2) "Negligent Design." (*Id.*) On December 22, 2011, Defendant timely removed the action to this court based on diversity jurisdiction. (Pet. for Removal, Docket Entry 1.) Defendant filed the instant motion for summary judgment on January 18, 2013.

## II. FACTUAL BACKGROUND

On a motion for summary judgment, this court views the evidence in the light most favorable to Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

On February 5, 2010, Plaintiff, a police officer with the City of Sanford, North Carolina Police Department ("Sanford PD"), was executing a search warrant when his Glock Model 37 semi-automatic pistol discharged and struck him in the back of his right calf. (Compl. ¶ 7, Docket Entry 4.) Plaintiff alleges that the gun discharged while in his holster, "causing serious injuries to [his] right calf leaving a permanent scar." (*Id.*) Plaintiff returned to full unrestricted work duty on March 6, 2010. (*See* Deposition of Daniel Kehagias ("Pl.'s Dep.") at 78, Decl. of Edwin Brondo Ex. D, Docket Entry 21-4.) In the incident report, Officer G.R. Bullard stated that the gun discharged "[a]s Capt. Kehagias was securing his firearm into his holster." (Incident Report, Brondo Decl. Ex. B, Docket Entry 21-2.) The narrative in the patient record from the Emergency Medical Services ("EMS") states: "[t]he patient was attempting to holster his weapon when it fired. . . ." (EMS Report, Brondo Decl. Ex. C, Docket Entry 21-3.)

In his complaint, Plaintiff alleges that the Glock Model 37 handgun was defectively designed and that Defendant owed a duty to Plaintiff to design the handgun in such a way that "made the gun safe for its intended purpose." (Compl. ¶ 15, Docket Entry 4.) Plaintiff further alleges that Defendant "was negligent in failing to properly design, manufacture, install, maintain, and communicate the defect in the gun to Plaintiff, creating a clear and immediate risk of serious injury." (*Id.* ¶ 18.)

2

On July 27, 2011, Plaintiff provided a written statement describing the incident in which he stated that the pistol was "fully" holstered and that "the trigger was not accessible while the weapon was holstered." (Brondo Decl., Ex. E, Docket Entry 21-5.) Plaintiff further stated that he "[did] not understand why the weapon discharged without the trigger being activated." (*Id.*) In his deposition, Plaintiff also testified that the pistol discharged without the trigger being pulled and that he has no idea why or how the gun discharged. (*See, e.g.*, Pl.'s Dep. at 50, 52, 53, 106.)

Plaintiff is a veteran police officer and the only user of the pistol in question. (Pl.'s Aff. ¶ 4.) According to Plaintiff, he is a certified firearms instructor and, prior to this incident, had never had a gun accidentally discharge. (*Id.* ¶ 3.)

Plaintiff has not identified any expert witness, produced any expert reports or produced any expert for deposition. In fact, Plaintiff has produced no other evidence as to the exact cause of the discharge of his gun. Plaintiff did not conduct any discovery. Discovery closed on January 18, 2013. (*See* Scheduling Order, Docket Entry 15.) Defendant produced reports of experts concluding that (1) the pistol was not defective in any way; (2) the design of the pistol made it impossible for the pistol to fire without a trigger pull; and (3) the pistol was operating as designed so that it could not have fired without a trigger pull. (*See* Glock Expert Reports, Brondo Decl. Ex. H, Docket Entry 21-8.) One of Glock's experts, Emanuel Kapelsohn, stated:

> I believe plaintiff's unfortunate accident resulted neither from any defect in the Glock pistol, nor from any problem with the interaction of the pistol with the subject Blackhawk holster. Instead, the evidence requires me to conclude that plaintiff's injury resulted from his holstering the pistol with his finger on the trigger and/or inside the trigger guard, in violation both of proper holstering procedure and of widely accepted firearms safety rules of which

3

Captain Kehagias was undoubtedly aware, and in which he had undoubtedly been trained.

(*Id.* at 2.) Similarly, another expert, Seth Bredbury, stated that in his opinion "[t]he incident pistol did not fire without the trigger safety and trigger being pulled." (*Id.* at 8.) Essentially, Defendant asserts that Plaintiff had his finger on the trigger when he holstered the weapon, causing the gun to discharge.

### III. SUMMARY JUDGMENT STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that the dispute exists. Rule 56(e); *Matsushita*, 475 U.S. at 586 n.11. Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In diversity actions heard in federal court, state law governs substantive issues and federal law governs procedural issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Thus, as a federal court sitting in diversity, we apply the substantive law of the state of North Carolina, the state in which the action arose. *Castillo v. Emerg. Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004) (citing *Erie*, 304 U.S. at 78).

## IV. DISCUSSION

Plaintiff asserts a claim for negligent design of the Glock Model 37 handgun.[1] Under North Carolina product liability law, manufacturers have a duty to use reasonable care to prevent potentially dangerous defects from occurring during the design or manufacture of their products. *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 75, 530 S.E.2d 321, 326 (2000). The essential elements of a products liability action based on negligence in North Carolina are: "(1) the product was defective at the time it left the control of the

---

[1] Plaintiff, conceding that North Carolina does not recognize strict liability in product liability actions, has abandoned his first cause of action for strict liability. (*See* Pl.'s Br. in Opp'n to Summ. J. Mot. at 4, Docket Entry 24.)

5

defendant, (2) the defect was the result of defendant's negligence and (3) the defect proximately caused plaintiff damage." *Id.* To survive summary judgment, "the non-movant must bring forth 'fact-specific and not merely speculative' evidence establishing the cause of [his] injury." *Ross v. Fed.Deposit Insur. Corp.*, 625 F.3d 808, 817 (4th Cir. 2010) (quoting *Driggers v. Sofamor, S.N.C.*, 44 F. Supp. 2d 760, 765 (M.D.N.C. 1998).

A plaintiff in North Carolina may establish the first element of a products liability claim inferentially by presenting "evidence of the product's malfunction, if there is evidence that the product had been put to its ordinary use." *Red Hill*, 138 N.C. App. at 76-77, 530 S.E.2d at 327. Likewise, a plaintiff may prove the second element through circumstantial evidence, but only if the plaintiff has first proven the existence of the defect through the use of direct evidence. *Id.* at 75, 530 S.E.2d at 326 ("An inference of manufacturer's negligence arises upon proof of an actual defect in the product."). However, a plaintiff may not use circumstantial evidence to prove both the defect and the fact that the defect resulted from the defendant's negligence. *Id.* at 77 n.7, 530 S.E.2d at 327 n. 7. As explained by this court in another matter:

> Plaintiffs are allowed to use certain inferences in proving these elements [for product liability claims]. For instance, a product defect may be inferred from evidence of the product's malfunction, if there is evidence the product had been put to its ordinary use. Further, where there is direct evidence of an actual defect, an inference of negligence arises. Expert testimony is enough to provide direct evidence of a defect. However, it is critical to the outcome of the product liability negligence claims in this case to note that a plaintiff cannot have a fact finder infer manufacturer negligence from a product defect which has been inferred from a product malfunction. In other words, a plaintiff may not prove negligence by stacking inference upon inference. Negligence may not be inferred without actual evidence of a defect.

6

*Carlton v. Goodyear Tire & Rubber Co.*, 413 F. Supp. 2d 583, 588 (M.D.N.C. 2005). (internal quotations and citations omitted). "Such stacking of evidence . . . would result in strict liability for product failure." *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, No. 5:06-CV-160-D, 2011 WL 1262159, at *6 (E.D.N.C. Mar. 31, 2011).

Plaintiff claims that Defendant "built and designed a . . . Model 37 handgun . . . that had a defective design." (Compl. ¶ 15.) Plaintiff further alleges that Defendant was "negligent in failing to properly design, manufacture, install, maintain, and communicate the defect in the handgun to Plaintiff, creating a clear and immediate risk of serious injury." (*Id.* ¶ 18.) However, Plaintiff has failed to produce any direct evidence that the Glock pistol was negligently designed at the time of sale.

Plaintiff appears to be arguing that the defect can be inferred because the gun malfunctioned while in ordinary use. "By itself, this inference is of little assistance because he could not then use the inferred defect to infer negligence on the part of defendant. He would have to produce actual evidence of a specific act of negligence on the part of defendant from a non-specific, inferred defect – a likely herculean task." *Carlton*, 413 F. Supp. 2d at 588. In fact, Plaintiff had possession of the weapon since it was purchased and had not reported any malfunction or mechanical problems. Moreover, there is simply no evidence in the record regarding Defendant's design and manufacturing processes, much less any facts showing that negligence occurred during those processes. Thus, Plaintiff has offered no evidence that the gun was defective at the time it left the manufacturer. Defendant's expert, moreover, examined and tested the pistol and reported that the "Glock pistol is not defective in any way." (Kapelsohn Report at 4, Docket Entry 21-8.)

7

Plaintiff argues that the doctrine of *res ipsa loquitur* applies to this case, "permitting negligence to be inferred from the physical cause of the accident." (Pl.'s Br. at 5, Docket Entry 24.) However, the law of *res ipsa loquitur* requires that the product which caused the injury be shown to have been under the control and operation of the defendant. *See Owens v. Owens*, 766 F.2d 145, 151 n.9 (4th Cir. 1985) (finding doctrine of *res ipsa loquitur* inapplicable where defendant did not have control over medical equipment at issue); *Hollenbeck v. Ramset Fasteners, Inc.*, 267 N.C. 401, 404, 148 S.E.2d 287, 289 (1966) (holding that *res ipsa loquitur* inapplicable where plaintiff had used the tool for a number of years, making it unreasonable to assume that defendant had knowledge superior to plaintiff's with regard to the use or condition of the tool). Here, the evidence clearly shows that the Glock 37 was under the control and operation of Plaintiff at the time of accident. *Res ipsa loquitur* thus does not apply.

## V. CONCLUSION

Plaintiff has failed to submit any evidence demonstrating how Defendant was negligent in the design of its pistol. Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment (Docket Entry 21) be **GRANTED**.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
July 18, 2013

8